*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARTIN COOPER,

Plaintiff-Appellant,

v

ARLENE VIOLET CARMONA and VICTOR
IVAN VILLALPANDO,

Defendants-Appellees.

UNPUBLISHED
February 14, 2019

No. 342298
Wayne Circuit Court
LC No. 16-001651-NI

Before: SWARTZLE, P.J., and MARKEY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting defendants' motion for summary disposition. We reverse.

This no-fault action arises out of a minor car accident between plaintiff and Victor Ivan Villalpando. Plaintiff was stopped at a stop sign when Villalpando rear-ended him at a low speed, resulting in little to no damage to either vehicle. Corporal Thomas Konarski responded to the scene. Plaintiff told Corporal Konarski that his back hurt, but declined Corporal Konarski's offer to call an ambulance. Plaintiff later complained of neck, back, and shoulder injuries.

Plaintiff argues that the trial court erred in granting defendants' motion for summary disposition because there was evidence to raise a genuine issue of fact as to whether he suffered an objectively manifested impairment. We agree.

Defendants moved for summary disposition under MCR 2.116(C)(10). This Court reviews a trial court's grant or denial of summary disposition de novo. *Detroit Edison Co v Stenman*, 311 Mich App 367, 377; 875 NW2d 767 (2015). "A motion for summary disposition under MCR 2.116(C)(10) tests the factual support for a claim." *Steward v Panek*, 251 Mich App 546, 555; 652 NW2d 232 (2002). "When reviewing a trial court's decision to grant a motion for summary disposition, we consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted in the light most favorable to the nonmoving party." *Id*. A genuine issue of material fact exists "when reasonable minds could differ on an issue after

viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

The Michigan no-fault insurance act limits tort liability. *Patrick v Turkelson*, 322 Mich App 595, 606; 913 NW2d 369 (2018). A "person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." *Id.*, quoting MCL 500.3135(1) (emphasis omitted). The issue in this case is whether plaintiff suffered a serious impairment of body function. "[W]hether a serious impairment of body function has occurred is a question of law for the court to decide unless there is a factual dispute regarding the nature and extent of injury and the dispute is relevant to deciding whether the standard is met." *McCormick v Carrier*, 487 Mich 180, 191; 795 NW2d 517 (2010) (cleaned up).

A serious impairment of body function is "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." *Patrick*, 322 Mich App at 606, quoting MCL 500.3135(5). Accordingly, MCL 500.3135(5) "provides three prongs that are necessary to establish a 'serious impairment of body function': (1) an objectively manifested impairment (2) of an important body function that (3) affects the person's general ability to lead his or her normal life." *McCormick*, 487 Mich at 195. Under the first prong, an objectively manifested impairment is "an impairment that is evidenced by actual symptoms or conditions that someone other than the injured person would observe or perceive as impairing a body function." *Id.* at 196. Because MCL 500.3135(5) uses the word "impairment" and not the word "injury," "the proper inquiry is whether the *impairment* is objectively manifested, not the *injury* or its symptoms." *Id.* at 197. "Impairment is the state of being impaired, and to be impaired means being weakened, diminished, or damaged, or functioning poorly or inadequately." *Id.* (cleaned up). "Although mere subjective complaints of pain and suffering are insufficient to show impairment, evidence of a physical basis for that pain and suffering may be introduced to show that the impairment is objectively manifested." *Patrick*, 322 Mich App at 607. "Medical testimony is generally, but not always, required to make this showing." *Id.*

Plaintiff argues that there is a question of fact regarding whether he suffered an objectively manifested impairment. In addition to plaintiff's subjective complaints of pain and suffering, he provided medical evidence of his impairments. An MRA of plaintiff's left shoulder showed that his "anterior labrum is markedly irregular," with "a cleft . . . traversing the labrum anteriorly." Additionally, "the anterosuperior labrum appears irregular and there are areas of fraying and separation." These objective findings revealed a complex tear of the labrum, fraying of the superior labrum, and supraspinatus tendinosis. An MRI of plaintiff's left shoulder revealed supraspinatus tendinosis, mild long head biceps tenosynovitis, and mild subdeltoid bursitis. MRIs of plaintiff's lumbar and cervical spine showed straightening of the normal lumbar and cervical spine alignments.

Dr. Jeffrey Carroll, one of plaintiff's treating physicians, concluded that plaintiff's complaints of shoulder pain, limited range of motion, and limited use of his left arm were consistent with the objective findings of the physical examinations and the injury shown in the MRI and MRA. Additionally, based on the MRA and MRI, plaintiff underwent arthroscopic

surgery for labral repair, biceps tenodesis, debridement of his rotator cuff tear, and subacromial decompression. After performing the surgery, Dr. Carroll was left with the impression that plaintiff's injuries were related to his accident. The medical evidence, and Dr. Carroll's conclusion from the medical evidence, contradicted defendants' assertion that the medical evidence showed only degenerative conditions and not any injuries from the accident. As Dr. Carroll stated, "Degenerative conditions can be asymptomatic or mildly symptomatic until a traumatic event like a car accident." Viewing the evidence in the light most favorable to plaintiff as the nonmoving party, we conclude that there was a dispute of fact regarding whether plaintiff suffered an objectively manifested impairment. Therefore, the trial court erred by granting defendants' motion for summary disposition when it determined that there was no objectively manifested impairment.

Plaintiff further argues that the trial court resolved a disputed issue of fact when it determined that the accident did not cause plaintiff's injuries. In determining that plaintiff's injuries were not related to the accident, the trial court stated:

> The doctor's notes on the MRA do no relate the tear to the accident. The notes indicate that plaintiff was in an accident, but do not say that the tear was caused by the accident.

> The ER doctor found that plaintiff didn't even complain of shoulder pain in the ER after the accident.

The trial court failed to consider Dr. Carroll's report that related plaintiff's injuries to the accident. Dr. Carroll submitted a narrative report in which he concluded, within a reasonable degree of medical certainty, that plaintiff's neck, back, and shoulder pain were attributable to the auto accident. Dr. Carroll stated, "I conclude that it is within a reasonable degree of medical certainty that his shoulder pain and limitations as to lifting and other strenuous activity arose as a direct result of the automobile accident as well as aggravation of the preexisting conditions contributing to his current difficulties." Additionally, Dr. Carroll's postoperative report listed plaintiff's injury as an "auto injury."

Dr. Carroll's findings were disputed by Dr. Maury R. Ellenberg, who conducted an independent medical examination of plaintiff. After examining plaintiff and his medical records, Dr. Ellenberg concluded that "it is unlikely that the labral tear is secondary to the motor vehicle accident. It was a rear-end accident. There were no initial complaints of shoulder pain whatsoever." Additionally, Dr. Ellenberg determined that "[t]he mechanism of injury would not generally have resulted in a significant labral tear." Because Dr. Carroll's and Dr. Ellenberg's reports created an issue of fact regarding whether the accident caused plaintiff's injuries, the trial court erred when it determined that the accident did not cause plaintiff's injuries.

Plaintiff also argues that the trial court resolved disputed issues of fact and made factual findings not supported by the record. Specifically, plaintiff argues that the trial court inferred that he lied about experiencing shoulder pain because the hospital notes from the day of the accident do not state that he complained of shoulder pain. "A court may not make a finding of fact or weigh credibility when ruling on a motion for summary disposition." *Anzaldua v Neogen Corp*, 292 Mich App 626, 637; 808 NW2d 804 (2011). Plaintiff further argues that the trial court

determined that his shoulder injury would have caused him immediate pain, although there was no medical evidence to support that determination. Plaintiff's arguments relate to whether there was a disputed issue of fact that he suffered an objectively manifested impairment. As stated above, the trial court erred in its determination on the issue.

Reversed and remanded for further proceedings. We do not retain jurisdiction. Plaintiff, having prevailed in full, may tax costs under MCR 7.219.


/s/ Brock A. Swartzle
/s/ Jane E. Markey
/s/ Amy Ronayne Krause