*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GERALD MILLEN and CUSTOM BUILD
PROPERTIES, LLC, doing business as
GREENHOUSE OF WALLED LAKE,

Plaintiffs-Appellants,

UNPUBLISHED
September 22, 2022

v

AARON BIRDSEYE, STEVEN ATWELL, and
ROBERT MANNA,

Defendants-Appellees.

No. 357290
Oakland Circuit Court
LC No. 2019-178743-NZ

Before: RONAYNE KRAUSE, P.J., and JANSEN and SWARTZLE, JJ.

PER CURIAM.

Plaintiffs, Gerald Millen and Custom Built Properties, LLC, doing business as Greenhouse of Walled Lake, appeal as of right the trial court's opinion and order granting summary disposition in favor of defendants Aaron Birdseye, Steven Atwell, and Robert Manna, thereby dismissing plaintiffs' claims of defamation, intentional infliction of emotional distress, and tortious interference with a contractual relationship. We affirm.

This case arises from postings on the Facebook page "Walled Lake Fax," which Birdseye created and maintained to chronicle what he perceived to be corruption in the city of Walled Lake regarding the distribution of business licenses for recreational marijuana provision centers. Plaintiffs were granted a business license to operate a recreational marijuana provisioning center in Walled Lake. BDS Medical Growers ("BDS"), a company owned by defendants Atwell and Manna, was denied a license. Plaintiffs were frequent targets of Birdseye's posts, along with Walled Lake City Council members, the mayor, and the city manager. Plaintiffs filed a complaint alleging defamation, intentional infliction of emotional distress, and tortious interference with a contractual relationship. The trial court granted defendants' motions for summary disposition under MCR 2.116(C)(10), dismissing plaintiffs' claims.

This Court reviews de novo a trial court's ruling on a motion for summary disposition. *Anzaldua v Neogen Corp*, 292 Mich App 626, 629; 808 NW2d 804 (2011). "A motion under MCR

-1-

2.116(C)(10) tests the factual support for a claim and should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id*. at 630. "The nonmoving party may not rest on the allegations in the pleadings, but must set forth, through documentary evidence, specific facts demonstrating a genuine issue for trial." *Id.*

Preliminarily, defendants argue that plaintiffs failed to include all the reasons for which the trial court granted summary disposition in their statement of questions involved, and therefore, have waived any appeal of the unaddressed issues. The trial court ruled that defendants were entitled to summary disposition for the reasons set forth in their briefs. The court also stated that plaintiffs failed to provide any admissible evidence in support of their claims for economic damages, and that plaintiffs failed to show that any of the alleged defamatory statements amounted to more than opinion. The court also stated that the forum in which the comments were posted made it more likely that the comments were opinions that were not provable as fact.

The reasons set forth in Manna's and Atwell's motions for summary disposition were that: (1) no evidence established that Manna or Atwell made or published the statements that were the subject of the complaint; (2) no evidence established that Manna or Atwell procured or assisted Birdseye in publishing the statements; and (3) there was no question of fact that Atwell, Manna, or BDS were vicariously liable for the statements made by Birdseye. Alternatively, Manna and Atwell argued that plaintiffs' claims must fail because the alleged statements were not actionable defamation, the conduct alleged in the complaint was insufficient to state a claim for intentional infliction of emotional distress, and no record evidence supported causation of damages in support of plaintiffs' claim of tortious interference. The reasons set forth in Birdseye's motion for summary disposition were that the alleged statements were not actionable defamation because they were opinion or rhetorical hyperbole, and Millen was a limited-purpose public figure and plaintiffs failed to show that the alleged statements were made with actual malice. Birdseye also argued that plaintiffs failed to present any evidence to establish their remaining claims.

In their brief on appeal, plaintiffs' statement of questions presented only raises issues involving damages and whether the trial court erred by finding that the comments at issue were not defamatory because they were opinion and the comments were published on social media. MCR 7.212(C)(5) requires that an appellant's brief contain "[a] statement of questions involved, stating concisely and without repetition the questions involved in the appeal[,]" and "[e]ach question must be expressed and numbered separately . . . ." An issue not contained in the statement of questions presented may be considered waived on appeal. *English v Blue Cross Blue Shield of Mich*, 263 Mich App 449, 459; 688 NW2d 523 (2004). We agree that plaintiffs' statement of the questions involved do not address the entirety of the reasons why the trial court granted defendants' motions for summary disposition. Nevertheless, because plaintiffs discuss and cite authority in support of their arguments, and defendants likewise address them, we too will address plaintiffs' arguments. *The Cadle Co v City of Kentwood*, 285 Mich App 240, 258; 776 NW2d 145 (2009).

In considering plaintiffs' arguments, however, we will not consider events that occurred after plaintiffs filed their complaint. After the complaint was filed, Birdseye's animosity toward plaintiffs significantly increased. Birdseye created another Facebook page, "Westland Fax," and called into a Westland city council meeting to comment negatively on plaintiff's application for a business license in the city of Westland. Birdseye also posted a picture of Millen's minor child on Facebook and called 911 to report a domestic violence incident at Millen's personal residence.

Millen requested and was granted a personal protection order against Birdseye. However, plaintiffs did not file a motion to supplement their pleadings to add these events, nor did plaintiffs argue at the summary disposition stage, or on appeal, that they should be allowed to supplement their pleadings. MCR 2.118(E) provides:

> On motion of a party the court may, on reasonable notice and on just terms, permit the party to serve a supplemental pleading to state transactions or events that have happened since the date of the pleading sought to be supplemented, whether or not the original pleading is defective in its statement of a claim for relief or a defense. . . .

Because plaintiffs did not supplement their pleadings under MCR 2.118(E), any events that occurred after plaintiffs filed their complaint are not properly before this Court.

Turning to the substantive merits of plaintiffs' claims, we conclude that the trial court properly granted defendants' motions for summary disposition on plaintiffs' claims for defamation, intentional infliction of emotional distress, and tortious interference with a contractual relationship.

"A plaintiff claiming defamation must plead a defamation claim with specificity by identifying the exact language that the plaintiff alleges to be defamatory." *Thomas M Cooley Law Sch v Doe 1*, 300 Mich App 245, 262; 833 NW2d 331 (2013). A communication is defamatory if it tends to lower an individual's reputation in the community or deters others from associating or dealing with that individual. *TM v MZ*, 326 Mich App 227, 240-241; 926 NW2d 900 (2018). "However, not all defamatory statements are actionable." *Ireland v Edwards*, 230 Mich App 607, 614; 584 NW2d 632 (1998). "If a statement cannot be reasonably interpreted as stating actual facts about the plaintiff, it is protected by the First Amendment." *Id.* A defamatory statement "must assert facts that are provable as false." *TM*, 326 Mich App at 241 (quotation marks and citation omitted). "The context and forum in which statements appear also affect whether a reasonable reader would interpret the statements as asserting provable facts, and this Court has recognized that Internet message boards and similar communication platforms are generally regarded as containing statements of pure opinion rather than statements or implications of actual, provable fact." *Sarkar v Doe*, 318 Mich App 156, 179; 897 NW2d 207 (2016) (quotation marks and citations omitted).

A plaintiff can establish a defamation claim by showing the following elements:

> (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication. [*Reighard v ESPN, Inc*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 355053); slip op at 5 (quotation marks and citation omitted).]

Plaintiffs' complaint contained the following list of alleged defamatory statements:

> a.  The Greenhouse of Walled Lake has poor quality products.

b.  The Greenhouse of Walled Lake has outrageous prices.

c.  The Greenhouse of Walled Lake cannot get product to sell.

d.  The Greenhouse of Walled Lake never has flower.

e.  The Greenhouse of Walled Lake sells contaminated product.

f.  Jerry Millen can't hold a job in an industry for an extended amount of time.

g.  Jerry Millen makes a name for himself at every job by harassing and intimidating people.

h.  Jerry Millen has zero morals or ethics.

i.  Jerry Millen lies and smears the reputation of individuals.

j.  Jerry Millen filed false police reports.

k.  Jerry Millen is working with Walled Lake's City Council to monopolize the market.

l.  Jerry Millen harasses people.

m.  Jerry Millen has a small penis, just ask Casey and Christy Ambrose.

n.  Jerry Millen has paid out thousands in bribes to Walled Lake's City Council.

o.  Jerry Millen brags about having law enforcement in his pocket.

p.  Jerry Millen is using reefer madness scare tactics.

q.  Jerry Millen doesn't care about his patience [sic: patients].

In support of their complaint, plaintiffs attached copies of the actual postings from the "Walled Lake Fax" Facebook page. Comparing the list of defamatory statements alleged in the complaint to the actual statements contained in the attached exhibits, it is clear that plaintiffs' allegations are only generalized statements or summaries of the actual statements contained in the exhibits. Plaintiffs failed to identify the exact language reflected in the exhibits, contrary to the requirement that a plaintiff claiming defamation must identify "the exact language that the plaintiff alleges to be defamatory." *Thomas M Cooley Law Sch*, 300 Mich App at 262. Because defendants moved for summary disposition under MCR 2.116(C)(10), plaintiffs could not rest on the allegations in the pleadings, but were required to set forth, through documentary evidence, specific facts demonstrating a genuine issue of fact for trial. *Anzaldua*, 292 Mich App at 630. In *Sarkar*, 318 Mich App at 185 n 15, this Court noted "that Michigan law requires a plaintiff to specifically identify every statement that he or she claims is capable of defamatory meaning." This Court went on to explain that quoting certain words, phrases, or providing citations to various webpages is

-4-

insufficient. *Id.* In this case, plaintiffs' complaint listed only generalized summaries of the statements they claimed were defamatory, and they left it up to the trial court to review the pages of their exhibits to match the alleged defamatory comments with the actual posts that support those claims. "It is not sufficient for a party simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Dep't of Environmental Quality v Sancrant*, 337 Mich App 696, 718; 976 NW2d 874 (2021) (quotation marks and citation omitted). But as in *Sarkar*, several of the alleged defamatory statements are easily discerned from the attached exhibits to permit this Court to review. *Sarkar*, 318 Mich App at 185.

A review of the submitted exhibits reveals that plaintiffs' alleged defamatory statements listed in ¶ 9a, b, g, l and ¶ 10 were actually written in the following form:

YOU LIKE WINNING FREE STUFF??

Do Walled Lake a favor and review Greenhouse Walled

Lake to let others know who they SHOULD NOT be giving

their money to!

Share a story of a time that you or someone you know

was harassed or intimidated by #JerryMillen or his team.

You can also leave a review on the poor quality of their

products, and the outrageous prices.

Screenshot your review and send it to us in a message

OR post it in the comments below with the

#boycottgreenhouse hashtag.

A winner will be selected on Monday, the 25th and will

receive AN AMAZON GIFT CARD!

These statements differ greatly from the statements alleged in the complaint and are written in a form that are not provable as false. *Ireland*, 230 Mich App at 617. Indeed, these are not actually statements of fact, but a solicitation for others to make statements.

The alleged defamatory statement that "Jerry Millen doesn't care about his patience [sic: patients]" is found in the attached exhibit. This statement resembles the statements made by the defendant in *Ireland*, *id*. at 617, regarding the plaintiff's fitness as a mother. This Court held that "[t]he question whether someone is a 'fit mother' . . . is necessarily subjective [and] . . . not

-5-

actionable." *Id.* Similarly, the question whether someone cares is not an objectively verifiable statement; it is a subjective assertion that is not actionable.

The alleged defamatory statement that "Jerry Millen brags about having law enforcement in his pocket" is similar to a statement found in the attachment to the complaint. Birdseye posted a lengthy statement regarding Walled Lake's denial of BDS's application for a business license and what Birdseye concluded was corruption among the city manager and a city council member. In response to this statement, one of "Walled Lake Fax's" followers asked, "Is law enforcement investigating the corruption?" Birdseye responded, "we have heard that they are . . .but any local law enforcement seems to be in their pocket. Jerry Millen even brags to people in the industry about it." The statement about city corruption does not mention plaintiffs. It was an explanation of BDS's application process and requests that were allegedly made to Atwell by a city council member and the city manager in exchange for BDS being granted a business license. The implication of Birdseye's response was that the city council member and the city manager had "law enforcement in their pocket." Therefore, Millen bragged that the city officials had "law enforcement in their pocket," not that Millen had "law enforcement in his pocket." This statement is similar to the word "blackmail" as it was used against the plaintiff in *Greenbelt Coop Publishing Ass'n v Bresler*, 398 US 6; 90 S Ct 1537; 26 L Ed 2d 6 (1970), as rhetorical hyperbole, "a vigorous epithet used by those who considered [the developer's] negotiating position extremely unreasonable." *Ireland*, 230 Mich App at 618, quoting *Greenbelt Coop Publishing Ass'n*, 398 US at 13-14 (quotation marks omitted). Similarly, Birdseye was expressing frustration at what he viewed as the city council's unfair and corrupt decision-making process regarding which applicants would receive the business licenses to operate marijuana provisioning centers in Walled Lake.

Plaintiffs have not presented any evidence that the remaining statements were actually made or posted by Birdseye. Moreover, many of these remaining statements, even if plaintiffs provided the proper specificity and evidence, are rhetorical hyperbole, such as Greenhouse never has product, Millen has zero morals or ethics, cannot hold a job, has a small penis, lies and smears individuals' reputations, and is working with the city council to monopolize the market. *Ireland*, 230 Mich App at 618.

The statements regarding contaminated product and Jerry Millen filing false police reports are statements provable as false. *TM*, 326 Mich App at 241. However, plaintiffs did not present evidence to establish that these comments were actually posted on "Walled Lake Fax."

For all of these reasons, the trial court did not err by granting defendants' motions for summary disposition of plaintiffs' defamation claim.

Moreover, defendants Atwell and Manna were also entitled to summary disposition because plaintiffs never presented any evidence to establish that they were in any way involved with "Walled Lake Fax." Plaintiffs presented Millen's affidavit in which he stated that "I have personally and directly heard from multiple members of Walled Lake's government that Mr. Atwell has stated that he is out to destroy my business." These alleged statements by city officials are hearsay and Millen did not even identify the declarants of these alleged statements. Demanding that evidence be substantively admissible is consistent with MCR 2.116(G)(4), which requires that an adverse party "set forth specific facts showing that there is a genuine issue for trial." "By

presenting inadmissible hearsay evidence, a nonmoving party is actually promising to create an issue for trial where the promise is incapable of being fulfilled. The nonmovant is not *showing* that a genuine issue exists. Permitting inadmissible evidence to suffice in opposing summary disposition would require less than the pre-1985 court rule and create illusory fact issues." *Maiden v Rozwood*, 461 Mich 109, 123 n 5; 597 NW2d 817 (1999). Plaintiffs' proffered evidence constitutes only a mere possibility that Manna and Atwell were directly responsible for the comments made on "Walled Lake Fax" that led to plaintiffs filing their complaint. Such evidence is insufficient to raise a material question of fact to overcome Manna's and Atwell's motions for summary disposition. See *Karbel v Comerica Bank*, 247 Mich App 90, 107; 635 NW2d 69 (2001). The trial court properly granted summary disposition in favor of defendants Atwell and Manna.

"To establish a claim of intentional infliction of emotional distress, a plaintiff must prove the following elements: (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Hayley v Allstate Ins Co*, 262 Mich App 571, 577; 686 NW2d 273 (2004) (quotation marks and citation omitted). "Liability attaches only when a plaintiff can demonstrate that the defendant's conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Lewis v LeGrow*, 258 Mich App 175, 196; 670 NW2d 675 (2003) (quotation marks and citation omitted). "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Doe v Mills*, 212 Mich App 73, 91; 536 NW2d 824 (1995). The test is whether "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' " *Roberts v Auto-Owners Ins Co*, 422 Mich 594, 603; 374 NW2d 905 (1985) (quotation marks and citation omitted).

In *Ireland*, 230 Mich App at 617-624, this Court dismissed the plaintiff's defamation claim because some of the claimed statements were not actionable because they were subjective or amounted to rhetorical hyperbole, and other statements, while defamatory, were not made with actual malice. Because the plaintiff's claim of intentional infliction of emotional distress relied on the same statements as her defamation claim, this Court held that the First Amendment limitations that applied to the defamation claim also applied to the intentional-infliction-of-emotional-distress claim. *Id.* at 624. Because the plaintiff could not overcome the First Amendment limitations regarding these statements, this Court ruled that summary disposition was properly granted as to both claims. *Id.* at 624-625.

Because plaintiffs' claim for intentional infliction of emotional distress also relies on alleged defamatory statements that could not overcome First Amendment limitations, the trial court also properly granted summary disposition of plaintiffs' intentional-infliction-of-emotional-distress claim.

Lastly, the trial court properly granted defendants' motions for summary disposition with respect to plaintiffs' claim for tortious interference with a contractual relationship.

In *Mino v Clio Sch Dist*, 255 Mich App 60, 78; 661 NW2d 586 (2003), this Court explained:

> The elements of tortious interference with a business relationship are the existence of a valid business relationship or expectancy, knowledge of the

relationship or expectancy on the part of the defendant, an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and resultant damage to the plaintiff. To establish that a lawful act was done with malice and without justification, the plaintiff must demonstrate, with specificity, affirmative acts by the defendant that corroborate the improper motive of the interference. Where the defendant's actions were motivated by legitimate business reasons, its actions would not constitute improper motive or interference. [Quotation marks and citation omitted.]

Plaintiffs argue that they had a business expectancy that Walled Lake would issue them a business license to sell recreational marijuana.

Walled Lake Code § 18-413 provides:

In the event any limitations established under this article prevent the department from issuing a state license to all applicants who meet the approval requirements under the Act, the city shall decide among competing applicants by a competitive process intended to select applicants who are best suited to operate in compliance with the Act within the city. In the event the city, the department or a court of competent jurisdiction determines the provisions of this article fail to meet the competitive process requirements under section 9 of the Act, the city council shall forthwith adopt a resolution or ordinance establishing a competitive process that satisfies the requirements of the Act.

This ordinance gives the city discretion to choose applicants by a competitive process in which applicants who are "best suited" to operate in Walled Lake are granted a license. "[W]hen the ultimate decision to enter into a business relationship is, by statute, a highly discretionary decision, a plaintiff cannot establish that its business expectancy reflected a reasonable likelihood or possibility and not merely wishful thinking." *Cedroni Ass'n, Inc v Tomlinson, Harburn Assoc, Architects & Planners, Inc,* 492 Mich 40, 47; 821 NW2d 1 (2012) (quotation marks, citation, and brackets omitted). Thus, plaintiffs were unable to establish a valid business expectancy in order to prove their claim for tortious interference with a contractual relationship. *Id.*

Because plaintiffs failed to present sufficient evidence to survive summary disposition under MCR 2.116(C)(10) on all of their claims, it is unnecessary to address whether plaintiffs presented evidence to support their requested damages. We note, however, that the trial court properly found that plaintiffs failed to provide any admissible evidence in support of their claims for economic damages, which plaintiffs asserted totaled $10 million. With respect to plaintiffs' claim that defendants' actions caused them to lose customers due to state investigations of corruption, plaintiffs failed to produce any evidence to support this claim. Whitt's deposition testimony that the city delayed issuing a license for several months did not establish lost profits, which must be proven with a reasonable degree of certainty to be recoverable, rather than being based on mere conjecture or speculation. *Body Rustproofing, Inc v Mich Bell Tel Co*, 149 Mich

App 385, 390; 385 NW2d 797 (1986).[1] Because plaintiffs failed to establish defamation per se or intentional infliction of emotional distress, the trial court did not need to reach a decision on damages, economic or noneconomic, but nevertheless, the court properly granted defendants summary disposition.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Kathleen Jansen
/s/ Brock A. Swartzle

---

[1] "Although cases decided before November 1, 1990, are not binding precedent, MCR 7.215(J)(1), they nevertheless can be considered persuasive authority[.]" *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012).